FILED
2024 Feb-02  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **Rocco J Leo,** *as Trustee of Bankruptcy Estate of Christy Grigsby and Anthony Grigsby and Grigsby Farm*, **et al,** | ) ) ) ) ) | |
| | ) | **Case No.: 4:20-cv-1997-ACA** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **KOCH FOODS, LLC, et al.,** | ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

Defendants Koch Farms of Gadsden, LLC ("Koch Farms") and Koch Foods, Inc. ("Koch Foods") (collectively, "Koch Defendants") have moved for partial summary judgment on the Packers and Stockyards Act ("PSA"), 7 U.S.C. § 192, claim asserted against them by Plaintiffs[1] Christy Grigsby, Anthony Grigsby, and Grigsby Farm (collectively, "Grigsby Plaintiffs"). (Doc. 112). The Koch Defendants contend that a class action settlement agreement in *In re: Broiler Chicken Grower Antitrust Litigation* (No. 11), Case No. 20-md-02977 (E.D. Okla.) ("*Broiler Grower Litigation*"), precludes the claim.

---

[1] When this case began, Mr. and Ms. Grigsby were in bankruptcy (*see* doc. 116 ¶ 1), so Rocco J. Leo, as Trustee of their bankruptcy estate, replaced the Grigsbys as the real party in interest (*see* doc. 42). After the bankruptcy court closed the bankruptcy estate, Mr. and Ms. Grigsby and Grigsby Farm became the real parties in interest. (*See* docs. 116, 117).

The Grigsby Plaintiffs contend that the settlement agreement bars their PSA claim against Koch Foods but not their PSA claim against Koch Farms. Because the settlement agreement precludes the Grigsby Plaintiffs' claim against Koch Foods and Koch Farms is a related entity of Koch Foods, res judicata precludes the Grigsby Plaintiffs' claim against Koch Farms. The court therefore **WILL GRANT** the Koch Defendants' motion and **WILL ENTER SUMMARY JUDGMENT** in the Koch Defendants' favor as to the PSA claim. Because the court has resolved the sole federal claim in this action, the court **DECLINES** to exercise jurisdiction over the remaining claims and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

## I.    BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

The Koch Defendants "operate as either an affiliate or as a part of" Koch Foods, Inc., "a poultry integrator involved in the raising, slaughtering, and processing of chickens for the production of various fresh or frozen poultry products for sale to the public." (*See* doc. 98 ¶ 14; doc. 61 ¶ 14; *see also* doc. 119). As part of their business, the Koch Defendants provide chickens to independent contractor farmers, who "grow[]" the chickens until they are ready for the Koch Defendants to slaughter and sell them. (*See* doc. 61 ¶¶ 14, 19; doc. 98 ¶¶ 14, 19).

The Grigsby Plaintiffs were farmers for the Koch Defendants. (Doc. 61 ¶ 10; doc. 98 ¶ 10). The Grigsby Plaintiffs allege that they grew chickens for the Koch Defendants from 2008 until January 2019, when they allege that the Koch Defendants stopped providing chickens to them. (Doc. 61 ¶ 33; doc. 98 ¶ 33). The Grigsby Plaintiffs brought this action alleging the Koch Defendants actions violated the PSA, as well as other state law causes of action. (Doc. 61 at 46–51).

Following the filing of multiple analogous class action complaints against Koch Foods and other poultry processing defendants nationwide, the Judicial Panel on Multidistrict Litigation consolidated the complaints into one class action. (*Broiler Grower Litigation*, doc. 1). The consolidated class action complaint alleged the poultry processing defendants created an anticompetitive market scheme to suppress the compensation of the contract broiler growers. (*Broiler Grower Litigation*, doc.

59 ¶¶ 36–37). The class members sought damages in violation of the PSA and the

Sherman Antitrust Act. (*Id.* ¶¶ 170, 173–75).

In June 2022, the judicial panel presiding over *Broiler Grower Litigation*

issued: (1) an order preliminarily approving a settlement with Koch Foods and

certifying the settlement class; and (2) an order approving the notice plan and

authorizing the issuance of notice to the Koch Foods settlement class. (*Broiler*

*Grower Litigation*, docs. 366, 367). The notice authorization gave class members

until September 2022 to opt out of the class. (*Broiler Grower Litigation*, doc. 366 at

3).

The settlement agreement was between the named plaintiffs and Koch Foods

and another Koch entity that is not a party to this case. (*See* doc. 99-2 at 1). It

contained the following release:

> The release shall be nationwide in scope and release all claims
> (including but not limited to any Sherman Act, Clayton Act, Packers
> and Stockyards Act, and/or federal, state, or common law unfair
> competition or anticompetitive conduct claims) any member of the
> Settlement Class ever had, now has, or hereinafter, can, shall, or may
> ever have, on account of, or any way arising out of, any and all known
> and unknown, foreseen and unforeseen, suspected and unsuspected,
> actual or contingent, liquidated or unliquidated claims, causes of action,
> injuries, losses (including, without limitation, all costs, expenses, and
> attorney's fees) or damages arising from or in connection with any act
> or omission through the date of Preliminary Approval relating to or
> referred to in the Action or arising from the factual predicate of the
> Action, including but not limited to Defendants' and Co-Conspirators'
> alleged overarching scheme, combination, understanding, and/or
> conspiracy to fix, maintain, stabilize, and/or suppress the compensation

paid to Broiler Growers for their provision of Broiler Grow-Out Services (the "Released Claims").

(*Id*. at 17–18 ¶ 14).

The settlement agreement defined the "Koch Group" as "Koch [Farms, the other named Koch entity,] and all of their predecessors, successors, assigns, Affiliates . . . , and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments." (*Id*. at 1). The settlement agreement released the following additional entities:

> [T]he Koch Group . . . together with any and all of the Koch Group's past, current, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, departments, divisions, joint ventures, predecessors, successors, and each of their respective past, current, and future, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, employees, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives.

(*Id*. at 6–7 ¶ (1)(q)). Finally, the settlement agreement provided that "[t]he Parties expressly agree that they intend for [the release] to be interpreted as broadly as possible and to the fullest extent permitted by law." (Doc. 99-2 at 20 ¶ 17).

The court ordered the approval of final settlement with the Koch Group and entered final judgment in October 2022. (*Broiler Grower Litigation*, doc. 420). The order of final judgment included a list of the growers excluded from the settlement. (*Id.* at 6). Neither Mr. nor Ms. Grigsby nor Grigsby Farms are listed. (*Id.*). The Koch Defendants now move for summary judgment as to the Grigsby Plaintiff's PSA

claim, invoking the full release in the *Broiler Grower Litigation* settlement agreement. (Doc. 112).

This is not the first time this court has considered this issue; the Koch Defendants previously presented the issue in a motion for summary judgment. (*See* docs. 99, 100). At that time, the Grigsby Plaintiffs had moved the judicial panel presiding over *Broiler Grower Litigation* to set aside its final judgment due to Koch Foods's alleged failure to provide them with notice of the proceedings and settlement agreement in the case. (*Broiler Grower Litigation*, doc. 442). This court denied the Koch Defendants' motion without prejudice to their opportunity to renew its argument after the judicial panel ruled on the Grigsby Plaintiffs' motion. (*See* docs. 110, 111). The judicial panel since denied the Grigsby Plaintiffs' motion to set aside the judgment. (*See Broiler Grower Litigation*, doc. 530).

## I.   DISCUSSION

The Koch Defendants move for partial summary judgment on the Grigsby Plaintiffs' PSA claim. (Doc. 112). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### a.   The Grigsby Plaintiffs' Claim Under the PSA (Count One)

In Count One, the Grigsby Plaintiffs assert that the Koch Defendants violated the PSA because the Koch Defendants created an anticompetitive market scheme to

suppress the compensation of the contract broiler growers. (Doc. 61 ¶¶ 149–55). The Koch Defendants contend that the class action settlement agreement in *Broiler Grower Litigation* precludes the Grigsby Plaintiffs' PSA claim against them. (*See* doc. 113 at 12–17; *accord* doc. 120 at 4–9). The Grigsby Plaintiffs now concede that their claim against Koch Foods is "due to be dismissed." (Doc. 115 at 7–8). Faced with this concession, the court **WILL GRANT** the Koch Defendants' motion as to the Grigsby Plaintiffs' claim against Koch Foods.

But the Grigsby Plaintiffs dispute that the settlement agreement released their claims against Koch Farms on grounds that Koch Farms was not a party to *Broiler Grower Litigation*, that judicial estoppel bars Koch Farms from taking the position that Koch Farms is in privity with Koch Foods, and that the PSA claims against Koch Farms are not covered by the release. (Doc. 115 at 8–14). Res judicata bars a claim "when (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1083 (11th Cir. 2022) (quotation marks omitted). So, the Grigsby Plaintiffs' arguments center around the third and fourth elements. (Doc. 115 at 8–14); *see also Consumer Fin. Prot. Bureau*, 30 F.4th at 1083.

Because the Koch Defendants' res judicata argument is based on a settlement agreement, "the principles of res judicata apply (in a somewhat modified form) to the matters specified in the settlement agreement." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (emphasis omitted). To determine the preclusive effect of final judgment based on a settlement agreement, federal courts must "attempt to effectuate the [signing] parties' intent," and [t]he best evidence of that intent is . . . the settlement agreement itself. *Id*. at 1289. When discerning the scope of that agreement, traditional rules of contract interpretation apply. *See id*. at 1289–90. And "[c]lass action judgments will typically bind all members of the class." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012).

Koch Farms was not a party to *Broiler Grower Litigation*, but "[r]es judicata also applies to those [entities] in privity with the parties" to the prior litigation. *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986). Relevant here, privity exists "where the nonparty's interests were represented adequately by the party in the original suit." *Id*. Facts relevant to this inquiry include (1) whether the party in the underlying litigation "understood [it]self to be" representing the nonparty, (2) whether the nonparty knew of the underlying litigation, or (3) whether the court in the underlying litigation "took special care to protect [the nonparty's] interests." *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 905 (2008).

The Grigsby Plaintiffs contend that a genuine dispute of fact exists regarding whether Koch Foods and Koch Farms are in privity because, according to the Grigsby Plaintiffs, the Koch Defendants previously denied that Koch Foods has any control over Koch Farms. (*See* doc. 115 at 12–13). Koch Farms responds that it denied that Koch Foods owned and controlled Koch Farms, but that control is irrelevant because the settlement agreement released "subsidiaries" and "related entities" and Koch Farms is an indirect subsidiary of Koch Foods. (Doc. 120 at 4–5, 9–10).

The settlement agreement does not define "related entities." (*See* doc. 99-2 ¶ 1). Controlling precedent dictates that this court must give the settlement agreement's terms "their 'plain and ordinary meaning' and" cautions against "add[ing] or subtract[ing] language from a clearly worded agreement." *Waters v. Int'l Precious Metals Corp.*, 237 F.3d 1273, 1277 (11th Cir. 2001). When a word is undefined, dictionary definitions are a helpful indicator of a word's ordinary meaning. *See*, *e.g.*, *Caren Ee. v. Alan Ee.*, 2 N.Y.S.3d 657, 660 (2015).[2]

Entities are "related" if they are "[c]onnected in some way" or "hav[e] relationship to or with something else." Related, *Black's Law Dictionary* (11th ed. 2019). Put differently, entities are "related" when they are "connected by reason of

---

[2] The settlement agreement contains a choice of law provision indicating that it "shall be governed by and interpreted according to the substantive laws of the State of New York." (Doc. 99-2 ¶ 22).

an established or discoverable relation." Related, *Merriam-Webster's Unabridged Dictionary* (3d ed. 2020); *see also* Relation, *Oxford English Dictionary* ("[A] link, a correlation; the fact of being so connected, associated, etc.; connection, association . . .") (2d ed. 2009).

The court concludes that Koch Farms has carried its burden to establish that it is a related entity of Koch Foods. In this litigation, the Koch Defendants have admitted that Koch Foods and Koch Farms operate together "as either an affiliate or as a part of a poultry 'integrator'" (*see* doc. 98 ¶ 14); indeed, Koch Farms "is the direct subsidiary of Koch Farms of Alabama, LLC, which is the direct subsidiary of Koch Farms, LLC, which is the direct subsidiary of Koch Foods" (*see* doc. 119). And the court therefore concludes that privity exists between the Koch Defendants. Koch Farms has been aware of and has contemplated the effect of *Broiler Grower Litigation* on this action. (*See, e.g.,* doc. 90 at 3–4; doc. 85). The settlement agreement in *Broiler Grower Litigation* appears to contemplate releasing claims against Koch Farms as a related entity of Koch Foods. (*See* doc. 99-2 at 6–7 ¶ (1)(q); *see also id.* at 20 ¶ 17) (expressing party intent "for [the release] to be interpreted as broadly as possible and to the fullest extent permitted by law"). Accordingly, the third res judicata element, "the parties, or those in privity with them, are identical in both suits," is satisfied. *See Consumer Fin. Prot. Bureau*, 30 F.4th at 1083.

Koch Farms contends that the fourth res judicata element is satisfied because the full release in *Broiler Grower Litigation* contemplated the Grigsby Plaintiffs' PSA claim. (Doc. 113 at 14–17; *accord* doc. 120 at 5–9). The Grigsby Plaintiffs respond that their claims include violations of the PSA not covered by the class action complaint in *Broiler Grower Litigation*. (*See* doc. 115 at 10–11). In reply, Koch Farms reiterates that the breadth of the settlement agreement precludes these arguments. (*See* doc. 120 at 8–9).

In considering the fourth *res judicata* element, federal courts ordinarily "look to the factual issues that must be resolved by the litigation and ask whether those facts arise out of the same transaction or series" as the first litigation. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 (11th Cir. 2002). But when res judicata is based on a matter resolved by settlement, the analysis proceeds differently. *Norfolk S. Corp.*, 371 F.3d at 1288. In such a circumstance, it is "the matters specified in the settlement agreement, rather than the original complaint" that are dispositive. *Id.*; *accord Consumer Fin. Prot. Bureau*, 30 F.4th at 1084 ("[W]here a case has been settled, the principles of res judicata apply to the matters specified in the settlement agreement.") (emphasis and quotation marks omitted).

The approved settlement agreement contained the following release:

> The release shall be nationwide in scope and release all claims (including but not limited to any Sherman Act, Clayton Act, Packers and Stockyards Act, and/or federal, state, or common law unfair competition or anticompetitive conduct claims) any member of the

Settlement Class ever had, now has, or hereinafter, can, shall, or may ever have, on account of, or any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses (including, without limitation, all costs, expenses, and attorney's fees) or damages arising from or in connection with any act or omission through the date of Preliminary Approval *relating to or referred to in the Action or arising from the factual predicate of the Action*, including but not limited to Defendants' and Co-Conspirators' alleged overarching scheme, combination, understanding, and/or conspiracy to fix, maintain, stabilize, and/or suppress the compensation paid to Broiler Growers for their provision of Broiler Grow-Out Services (the "Released Claims").

(Doc. 99-2 at 18 ¶ 14) (emphasis added). The settlement agreement further provides that "[t]he Parties expressly agree that they intend for [the release] to be interpreted as broadly as possible and to the fullest extent permitted by law." (*Id*. at 20 ¶ 17).

The Grigsby Plaintiffs contend that their PSA claim includes conduct outside the scope of this settlement agreement because their allegations include more "than just the price fixing or anticompetitive provisions that harmed competition." (Doc. 115 at 10). But the settlement agreement released Koch Farms from its alleged participation in an "overarching scheme . . . to fix, maintain, stabilize, and/or suppress the compensation paid to" the Grigsby Plaintiffs for their services. (Doc. 99-2 at 18 ¶ 14; *see also id*. at 6–7 ¶ (1)(q)).

Although the Grigsby Plaintiffs identify the different ways in which they allege that Koch Farms participated in that scheme to suppress the compensation paid to the Grigsby Plaintiffs (*see* doc. 115 at 10–11), "that is not dispositive,"

*Trustmark Ins. Co.*, 299 F.3d at 1270. Indeed, "[w]hen a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action." *Trustmark Ins. Co.*, 299 F.3d at 1270 (quoting Restatement (Second) of Judgments § 24 cmt. d (1982)) (quotation marks omitted).

The settlement agreement released Koch Farms from its alleged participation in an "overarching scheme" designed to "suppress the compensation paid to" the Grigsby Plaintiffs. (Doc. 99-2 at 18 ¶ 14; *see also id*. at 6–7 ¶ (1)(q)).  Because the Grigsby Plaintiffs' PSA claim is based on Koch Farms's alleged participation in that overarching scheme, the court is persuaded that the settlement agreement precludes this claim. Accordingly, the court **WILL GRANT** the Koch Defendants' motion and **WILL ENTER** judgment in Koch Farms's favor as to the PSA claim.

      b.  The State Law Claims (Count Two and Three)

Because the court will enter judgment in the Koch Defendants' favor as to the sole federal claim, only the state law claims remain. A "district court[] may decline to exercise supplemental jurisdiction" where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (observing that after summary

13

judgment has been granted on all federal law claims, the district court has discretion

to decline to exercise supplemental jurisdiction over the state law claims).

The Eleventh Circuit encourages district courts to do so if all federal claims

are resolved before trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th

Cir. 2004); *accord Hicks*, 422 F.3d at 1255 n.8. The court therefore **DECLINES** to

exercise jurisdiction over the remaining claims and **WILL DISMISS** those claims

**WITHOUT PREJUDICE**.

## II.    CONCLUSION

The court **WILL GRANT** the Koch Defendants' motion (doc. 112) and

**WILL ENTER SUMMARY JUDGMENT** in the Koch Defendants' favor as to

the PSA claim. Because the court has resolved the sole federal claim in this action,

the court **DECLINES** to exercise jurisdiction over the remaining claims and **WILL**

**DISMISS** those claims **WITHOUT PREJUDICE**. The court will enter a separate

partial judgment and final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 2, 2024.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE